Boynton, J.
The first question arising on the record in the present case, involves the power of the county commissioners to lay out and construct a new county road, and improve an existing road, in the same proceeding and under the same petition, under the act of March 29, 1867 (64 Ohio Laws, 80), and the acts amendatory thereof. By the first act, authorizing the-commissioners to construct roads on the petition of a majority of resident land owners along and adjacent to the line of the-road, they were limited and confined in their authority to the-improvement of -roads previously laid out and established. This act was passed April 5, 1866 (63 Ohio Laws, 114), but was-only continued in force until the act of 1867, was passed, by which the whole subject-matter of the act of 1866 was revised,, and the act repealed.
By the first section óf the act of 1867, power was conferred on the commissioners to lay out and construct state and county roads or parts thereof, as well as to impi’ove existing roads, the; power to be exercised in the mode prescribed by the provisions of that act.
By the second section it was enacted, that “ before the commissioners of any county shall order am/ imvprovemenb mentioned in the first section of this act, a petition shall be presented to them at any regular or called session, signed by a. majority of land holders resident within said county, whose-lands will be assessed for the expense of the same, as hereinafter provided, stating the kind of improvement prayed for,, and the points between which the same is asked.”
It seems manifest from the language of this-provision, that, the word “ improvement ” related not only to the improvement of an existing road, but also to the establishment and construction of a new road. Unless this be so, the act provided no mode for carrying into effect the power conferred by the first section, to order the -laying out and construction of new roads. By the express language of that section, the power to- *293 ■construct, as well as to improve, was to be exercised in the mode prescribed in the subsequent provisions of the act, and the second section was the only one prescribing the mode of procedure to bring the power to lay out and construct into operation. And although the second section of that act was so amended by the act of March 31, 1868 (65 Ohio Laws, él), ■as to drop out a part of the language' above quoted, it still remains true, that the power to order the construction or improvement, under the statute thus amended, can only be exercised under a petition, stating the kind of improvement prayed for.
The word “ improvement,” as used in the act, in the provisions subsequent to the first section, in nearly all instances .relates to, and includes, the laying out and construction of new roads, as well as the improvement and repair of those previously constructed, and in actual use. For instance, the only hond to be given is required to be for the payment by the •obligors of the expense of the preliminary survey and report, if the said improvement is not finally ordered. § 2. ' The •same section requires the county auditor to give notice by publication of the kind of improvement asked for. By section 3 provision is made for assessing compensation or damages to •owners whose property is taken for the improvement. And while section é devolves on the viewers and engineer the duty to report to the commissioners upon the public necessity of the contemplated construction, or improvement, no report is required to be made of the damages claimed, and the amount assessed each claimant, except as they relate to the improvement. The commissioners are authorized, if in their opinion ■public utility requires it, to order the improvement to be made,, .and when so ordered, the duty is enjoined upon them, to appoint three disinterested freeholders, who are required, upon actual view of the premises, to apportion the estimated expense •of said improvement upon the real property embraced in the order, according to the benefit to be derived therefrom. These provisions, without respect to others of like character and significance to which reference might be made, suffice to show that the term “ improvement,” as employed in the statute, was intended to include and embrace the construction of a now road *294 as well as the repair of an old one. A thing within the intention of the makers of a statute is as much within the statute, as if within the letter. 9 Bacon Ab. 247. Such being the meaning of the statute, we are of the opinion that since the passage of the act of April 23, 1869 (66 Ohio Laws, 59), amendatory of section 1 of the act, as amended March 31,1868, the commissioners have possessed the power, if they did not possess it before, to order the construction of a new county road, and the improvement of an existing state, county or township road, &c., under the same petition, where the samo constitute one continuous road improvement. This power was-expressly ■ given by the last clause of said section, as thus-amended, and was carried into the subsequent amendment of' the same section by the act of April 11, 1876. 73 Ohio Laws, 184.
2. It is next objected, that 'the petition for the improvement was not subscribed by the majority of the resident land owners of the county whose lands were reported as benefited by the improvement, and for the expense of which they ought to be assessed. The first ground of the objection is, that the petition signed by the resident land' owners of the villages of Ottawa, and Grilboa was not the petition mentioned in the second section of the act, as amended March 31, 1868, and hence, that there was no authority to count such persons as -petitioners for the improvement. It is true, that the statute withholds from the commissioners the power to order the improvement until a majority of resident land owners, whose lands, as reported, will be. benefited by the improvement, shall have subscribed the petition mentioned in the second section of the act. But it is-nowhere required that all the petitioners should sign the same paper. Braden v. Commissioners of Logan County, 31 Ohio St. 386. They must join in the petition for the improvement, provided for by said section ; and this was done by the petitioners from the two villages, by the petition they presented. They recited the fact that they were land owners whose lands would be assessed for the improvement of a road “ petitioned for by John Maidlow and others,” and respectfully asked, that they might be “ counted as petitioners for said improvement.”' *295 Unless we adhere to the letter and disregard the obvious purpose and meaning of the statute, this was equivalent to signing the Maidlow petition, and gave the commissioners as complete authority to count those who signed such paper, in favor of the improvement, as if their names had been appended to the paper signed 'by Maidlow. Moreover, it is provided by section 13 of the act of March 29, 1867, that the proceedings under that act shall not be held to be void on account of any informality or irregularity in the form of the petition, or any informality appearing in the record of the proceedings of the commissioners, or any other proceedings pertaining thereto.
The second ground of objection is, that village lots, lying within the limits of a municipal corporation, are not within the description of “ lots and lands ” required by the fourth section of the act, as amended April 18, 1874 (71 O. L. 94), to'be reported for assessment. This objection was considered in Makemson v. Kauffman, 35 Ohio St. 444, and it was there determined that such objection was invalid. The statute requires the viewers and engineer to report for assessment all lots and lands lying within two miles of the contemplated improvement, which, in their judgment, will be benefited thereby, and which ought to be assessed therefor; the said distance to be computed in any direction from either side, end or terminus of said road. An owner of a village lot is as much a land owner as the owner of a farm ; and in some circumstances such lot may be quite as much benefited by a road improvement as a parcel consisting of many acres. Such lots, being embraced -within the words of the statute, are to be held within its meaning, unless, from a consideration of all its parts, a contrary intention appears. 9 Bacon Ab. 247.
That the legislature intended to place lots within ,a municipality in the same category as those without, in respect to the expense of the improvement, is evident from the provisions of section 9 of said act. 64 Ohio Laws, 83. That section provides :
“ That when any road to be improved under and by virtue of this act, begins or terminates in a city or incorporated village, the corporate authorities of such city or village may, upon *296 the recommendation of the county commissioners, if they deem the same expedient, agree to pay, in the bonds of said city or village, in the manner and proportions described in the seventh section of this act, in addition to any amount that may be assessed upon the real property of such village, by virtue of the provisions of this act, an amount not exceeding- oue-fiftli of the entire cost of said road; provided, that the entire tax to be imposed for road purposes, by virtue of this section, shall not in any one year exceed five mills on the dollar, of the taxable values of said city or village.”
This provision would seem to remove all doubt respecting the power to embrace within the lots and lands to be assessed for the improvement those lying within corporate limits. The words “ in addition to any amount that may be assessed upon the real property of such village by virtue of the provisions of this act,” have reference to the assessment of the real property of the village in conjunction with all other property lying within the assessing district, and subject to assessment, to meet the expense of the improvement.

Judgment reversed cmd petition dismissed.